# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

**J. DONALD DISHMAN,**

   Plaintiff,

v.  :  Civil Action No. 7:08-cv-45 (HL)

**ROBERT H. WISE, M.D. and**
**RADIOLOGY ASSOCIATES**
**OF VALDOSTA, P.C.,**

   Defendants.

# ORDER

Currently pending before the Court are Defendants Robert H. Wise, M.D. and Radiology Associates of Valdosta, P.C.'s ("Defendants") Motion to Exclude Expert Causation Testimony of Tamara Clancy, M.D. (Doc. 46) and Defendants' Motion for Summary Judgment (Doc. 33). The motions have been fully briefed by the parties and are ripe for adjudication. The parties also appeared before the Court on July 1, 2009 for a hearing on the Motion to Exclude.

After review of the motions and briefs, the pleadings and discovery materials on file, and the relevant case law, the Court grants Defendants' Motion to Exclude (Doc. 46) and grants Defendants' Motion for Summary Judgment (Doc. 33).

**I.    FACTS**

On April 26, 2006, Plaintiff J. Donald Dishman ("Dishman"), a 47-year-old chiropractor, was injured while driving his motorcycle. The accident occurred at a track

in Jennings, Florida.  After being assessed onsite, Dishman was transported to South Georgia Medical Center, located in Valdosta, Georgia.  He was initially examined by Dr. Douglas Moss.

Dr. Moss ordered x-rays of Dishman's right hand, lower extremity, and lumbrosacral spine.  These x-rays were sent to Defendant Robert H. Wise, M.D., ("Wise") for review.  Wise interpreted the x-rays as radiographically normal.

Dishman continued to experience discomfort in his hand in the weeks following the accident.  Approximately five weeks after the accident, Dishman sought a second opinion for his hand.  On June 2, 2006, Dishman was seen by Charles Williamson, M.D., a general orthopedist in Port Orange, Florida.  Dr. Williamson detected a comminuted fracture of the fourth middle phalangeal joint of Dishman's right ring finger. He referred Dishman to Tamara R. Clancy, M.D. ("Dr. Clancy"), an orthopedic hand surgeon at Volusia Hand Surgery Clinic in Daytona Beach, Florida.  Dr. Clancy evaluated Dishman and surgically repaired Dishman's hand through open reduction with internal fixation. While Dishman's range of motion has been restored to an extent, he continues to suffer arthritis, stiffness, and pain in his right hand.

Dishman alleges that Wise was negligent in several respects, and breached his duty of care to act as a reasonably prudent physician under like or similar circumstances.[1]  Specifically, Dishman alleges Wise (1) negligently failed to correctly

---

[1] Radiology Associates of Valdosta, P.C., was named as a defendant based on vicarious liability.  Dishman contends in his complaint that Radiology Associates was the employer, principal, and/or master of Wise during the time relevant to this case.

interpret the x-rays conducted on Dishman's right hand; (2) negligently failed to appreciate and comment upon the significance of the radiographic findings on the x-rays he interpreted for Dishman; (3) negligently failed to communicate to the treating physician at the hospital that there was an appreciable fracture which required treatment; and (4) negligently failed to follow up with Dishman regarding the fracture. Dishman seeks monetary recovery for his medical expenses, lost wages, pain and suffering, and the interference the injury to his hand has had with his quality of life and ability to function and work.

To support his contention that Wise's delay in diagnosis caused his injuries, Dishman relies solely upon the deposition testimony of Dr. Clancy.

## II. DEFENDANTS' MOTION TO EXCLUDE

In federal court, expert opinions must meet the admissibility guidelines announced by the Supreme Court in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786 (1993), and Federal Rule of Evidence 702. Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, relevant expert testimony is admissible only if the trial court finds that: (1) the expert is qualified to testify about the matters he intends to address;

3

(2) the methodology used by the expert to reach his conclusions is sufficiently reliable; and (3) the expert's testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or determine a fact in issue.  McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002) (citations omitted).  District courts have a duty under Rule 702 to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589.  Dishman bears the burden of laying the proper foundation for the admission of Dr. Clancy's testimony, and admissibility must be shown by a preponderance of the evidence.  Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999) (citation omitted).

Dr. Clancy was one of Dishman's treating physicians.  While a treating physician "may testify regarding his observations and decisions during treatment of a patient, once the treating physician expresses an *opinion* unrelated to treatment which is 'based on scientific, technical, or other specialized knowledge,' that witness is offering expert testimony for which the court must perform its essential gatekeeping function as required by Daubert."  Wilson v. Taser Intern., Inc., 303 Fed. Appx. 708, 712 (11th Cir. Dec. 16, 2008) (emphasis in original).

Here, it would be perfectly appropriate for Dr. Clancy to testify about the fracture to Dishman's finger and her surgical repair of the fracture.  But Dr. Clancy has gone one step further, in that she has given an opinion, albeit equivocal, regarding the cause of the current stiffness, pain, and arthritis in Dishman's right hand.  This opinion "was

not needed to explain [her] decision making process, nor did it pertain to [Dishman's] treatment." Id. Dr. Clancy's testimony that "[i]t's more likely that [Dishman] would have had a better outcome in this. . .with respect of less stiffness and less pain and less chance of developing that as well as arthritis" if Dishman's fracture had been diagnosed on April 26, 2006, and treatment provided shortly thereafter, is a hypothesis. Thus, Dr. Clancy's opinions on causation fall within Rule 702's scope of scientific knowledge and must satisfy Daubert.[2] Id.

The first test under Rule 702 is whether the witness offering the testimony is qualified to do so. The Eleventh Circuit has noted that "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." United States v. Frazier, 387 F.3d 1244, 1260-1261 (11th Cir. 2004). Dishman contends that Dr. Clancy is qualified to testify about causation based on her experience as an orthopedic surgeon. Defendants do not argue that Dr. Clancy is unqualified to testify, so this factor is not at issue.

The next step is to determine if the witness' opinions are reliable. When evaluating the reliability of expert opinion, the trial court must assess "whether the reasoning or methodology underlying the testimony is scientifically valid and. . .whether that reasoning or methodology properly can be applied to the facts in issue." Id. at

---

[2]Though Daubert involved scientific experts, the strictures of Rule 702 and Daubert apply with equal force to non-scientific expert witnesses. *See* Kuhmo Tire Co. v. Carmichael, 526 U.S. 137, 147, 119 S.Ct. 1167 (1999).

5

1261-1262 (citation omitted). In order to pass muster, the expert testimony must be reliable and must constitute knowledge. Daubert, 509 U.S. at 590.

The Supreme Court has provided four guiding factors that a district court may consider in assessing the reliability of expert testimony: "(1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community." McDowell v. Brown, 392 F.3d 1283, 1298 (11th Cir. 2004) (citing Daubert, 509 U.S. at 595). These factors do not constitute a strict checklist, but are meant to be helpful to the court.[3] Kuhmo Tire Co. v. Carmichael, 526 U.S. 137, 151, 119 S.Ct. 1167 (1999).

---

[3]Additional factors the court may consider include:

(1)    Whether the expert is proposing to testify about matters growing naturally and directly out of research he has conducted independent of the litigation, or whether he has developed his opinion expressly for purposes of testifying;

(2)    Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion;

(3)    Whether the expert has adequately accounted for obvious alternative explanations;

(4)    Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting;

(5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

Fed. R. Evid. 702, advisory committee's notes (2000 amends.).

Defendants argue that Dr. Clancy's opinion testimony is not reliable as required by Daubert.  The Court agrees.  It is Dr. Clancy's opinion that had Dishman been treated earlier, it is more likely than not that he would have had a more successful outcome with respect to his hand.  She has not, however, demonstrated that her opinion is testable; she has not offered any error rate for her opinion; she has not shown any evidence that her opinion has been peer reviewed or that she used a peer-reviewed source to reach her opinion; and she has not shown the general acceptance of her opinion.  See Wilson, 303 Fed. Appx. at 714.  Neither Dishman nor Dr. Clancy has submitted any medical literature, studies, or any other information which suggests that the methods employed by Dr. Clancy in reaching her opinion have been subjected to meaningful collegial scrutiny, are generally accepted in the medical community, or have otherwise been established as reliable.

    Dr. Clancy testified to the following during her deposition:

> Well, research has showed us that, you know, if you can get to these injuries within a week or two versus five or six or four weeks . . . you know, if you take a hundred people, most people are going to do better if you get to them quicker as opposed to the group that you don't operate on as fast.

(Clancy depo., p. 14).

Dishman argues that the "research" mentioned in this passage provides support for Dr. Clancy's opinion.  But when questioned more directly about support for her opinion, Dr. Clancy testified:

> Q: All right. And your basis on that . . . your basis of the opinion is just the earlier the treatment, the better?
>
> A: The quicker you can get a joint, whether it's a finger joint; a wrist joint; a hip joint; a knee . . . the quicker you can get a joint back aligned as close to anatomical or anatomical as possible, the less chance of developing the complications that we talked about.
>
> Q: But he still could develop them.
>
> A: Yes.
>
> Q: Is there any peer review literature source that you can direct me to that establishes the principle - -
>
> A: Right off the top of my head, no. As far as an article? I mean . . .
>
> Q (Nods head up and down)
>
> A: Yeah, I'd have to look it up.

(Clancy depo., pp. 29-30) (objections omitted).

No such supporting literature has been submitted to the Court. While Dr. Clancy refers to research that shows most people will have a better outcome if they are treated sooner rather than later, at no point has any identifying information about that research been provided. Thus, the Court is unable to review the research upon which Dr. Clancy relied in forming her opinion. As she has provided no basis for her opinion, and has offered no evidence that her opinion is reliable, the Court finds that Dr. Clancy fails the second prong of the Rule 702 test.

The third test is that the expert testimony must assist the trier of fact to decide a fact in issue. "Expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262. "[E]xpert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Id.

The Court agrees with Defendants that McDowell v. Brown, 392 F.3d at 1283, is directly on point. In McDowell, the Eleventh Circuit was faced with the question of whether the plaintiff's experts' testimony as to causation was admissible under Rule 702. Plaintiff McDowell alleged that a delay in treating his spinal epidural abscess caused or worsened his neurological condition. McDowell's first expert, Dr. James Merinkangas, opined that early treatment of a patient with such an abscess reduced neurological damage and that a four-hour delay caused McDowell's injuries. His theory was based "on the common sense and 'universal' axiom that expedited treatment is preferable to delayed treatment." Id. at 1299. The district court excluded Dr. Merinkangas' testimony.

In affirming the district court, the Eleventh Circuit held that:

> The district court was correct in finding that 'the earlier, the better' theory was 'too vague' to assist the trier of fact. Indeed, the notion of early treatment is well within common knowledge that would be obvious to the average juror, but has nothing to do with causation....As such, this 'the earlier, the better' theory adds nothing absent some testimony connecting the delay to the causation or aggravation of an injury.

9

Id. at 1299-1300.

Dr. Clancy's testimony is no different from that excluded by the court in McDowell. When asked if "it's just the earlier, the better?," Dr. Clancy replied, "Yeah." (Clancy depo., p. 15). Further, like Dr. Merinkangas in McDowell, Dr. Clancy has not definitively connected the delay in treatment to the cause or aggravation of the injury. Rather, she testified that the initial injury itself, the fracture, could have resulted in the same injuries for which Dishman now seeks recovery against Defendants. (Clancy depo., pp. 13, 17, 23, 25).

Another problem is Dr. Clancy's testimony that there is "no way for me to tell whether this patient would have been better," and that she could not rule out Dishman having the same outcome if he was diagnosed and treated earlier. (Clancy depo., pp. 15, 30-31). In McDowell, the plaintiff's second expert, Dr. Rabih Darouiche, concluded that McDowell would have suffered less injury had he been treated earlier. Id. at 1300. He testified, however, that McDowell may have suffered the same injuries had he been treated earlier. The Eleventh Circuit agreed with the district court that "Dr. Darouiche's proffered testimony was more of a guess than a scientific theory. . . .A mere guess that earlier treatment would either have improved McDowell's condition or rendered it the same simply fails the tests for expert opinion." Id. at 1301. Dr. Clancy's opinion testimony is no different, and her testimony is inadmissible under Rule 702.

Nevertheless, the Court will also address Dishman's argument that Dr. Clancy's opinion is admissible because it is based on her education and experience as an

10

orthopedic surgeon. The Court does not disagree that experience may provide a sufficient foundation for expert testimony. *See* Fed. R. Evid. 702, advisory committee's notes (2000 amends.). This does not mean, however, that "experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion the expert may express." Frazier, 387 U.S. at 1261 (emphasis in original). "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Id. (citing Fed. R. Evid. 702, advisory committee's notes (2000 amends.)).

Dr. Clancy did none of those things. At no time has Dr. Clancy explained how her experience as an orthopedic surgeon leads her to the conclusion that Dishman's results more likely than not would have been better had he been treated sooner. And while the Court knows that Dr. Clancy has been an orthopedic surgeon for 13 years and has treated the type of injury suffered by Dishman for at least five years, it is unaware of how that experience forms the basis for her causation opinion. Finally, there is no evidence or testimony showing a reliable application of her experience to the facts of this case. "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Id. (citing Fed. R. Evid. 702, advisory committee's notes (2000 amends.)). The Court cannot take Dr. Clancy's word for it that the delay caused the injuries, but the lack of a connection between her experience and the facts of this case

leaves the Court with nothing but her word. Rule 702 and Daubert require more. Dr. Clancy's experience-based opinion is inadmissible.[4]

The proponent of expert testimony always bears "the burden to show that his expert is 'qualified to testify competently regarding the matters he intend[ed] to address; [ ] the methodology by which the expert reach[ed] his conclusions is sufficiently reliable; and [ ] the testimony assists the trier of fact.'" Frazier, 387 F.3d at 1260 (citations omitted). Dishman has not met this burden with regard to Dr. Clancy. Her opinion testimony is inadmissible under Rule 702 and Daubert. Defendants' Motion to Exclude is granted.

## III.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.   Summary judgment standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of informing the court of the basis for the motion and showing that there is no genuine issue of material fact by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S.

---

[4]The Court notes for the record that Dr. Clancy did not appear to testify at the hearing on Defendants' Motion to Exclude. She also did not provide any additional testimony, either through a deposition or an affidavit, after the Motion to Exclude was filed.

317, 323, 106 S.Ct. 2548 (1986). If the non-moving party will bear the burden of proving the material issue at trial, then in order to defeat summary judgment, he must respond by going beyond the pleadings, and by his own affidavits, or by the discovery on file, identify facts sufficient to establish the existence of a genuine issue for trial. See id. at 322, 324.

A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-250 (internal citations omitted). It is not the court's function at the summary judgment stage to determine credibility or decide the truth of the matter. Id. at 249. Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

Furthermore, "[a] nonmoving party, opposing a motion for summary judgment supported by affidavits[,] cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial." Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991) (citation omitted), cert. denied, 506 U.S. 952, 113 S.Ct. 405 (1992). The evidence "cannot consist of conclusory allegations or legal conclusions." Id. (citation omitted).

**B.     Discussion**

Defendants contend that they are entitled to judgment as a matter of law on all of Dishman's claims, and that there are no material issues of fact remaining in this case.

A plaintiff alleging medical negligence must establish three essential elements: "(1) the duty inherent in the doctor-patient relationship; (2) the breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure was the proximate cause of the injury sustained. . . .It must be proven that the injury complained of proximately resulted from such want of care of skill.  A bare possibility of such result is not sufficient." Goggin v. Goldman, 209 Ga. App. 251, 252, 433 S.E.2d 85 (1993) (internal citations and quotations omitted).

In order to defeat summary judgment, the non-movant must provide the court with evidence which would be admissible at trial.  *See* Avirgan, 932 F.2d at 1577.  As set forth above, Dr. Clancy's causation opinion testimony would not be admissible at the trial of this case under Rule 702.[5]  In order to prove the causation prong of a

---

[5] Dr. Clancy's testimony would similarly fail under O.C.G.A. § 24-9-67.1, which governs the admissibility of expert opinions in Georgia state cases.  Section 24-9-67.1 allows a qualified expert to give an opinion if: "(1) The testimony is based upon sufficient facts or data which are or will be admitted into evidence at the hearing or trial; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case."  Dr. Clancy has provided no indication of the principles and methods she employed in reaching her conclusions, including whether they were reliable.  *See* McGuire Holdings, LLLP v. TSQ Partners, LLC, 290 Ga. App. 595, 660 S.E.2d 397 (2008) (holding that the trial court properly excluded the expert testimony of a surveyor where he failed to provide the principles and methods on which he relied to develop his opinion).

medical malpractice claim, a plaintiff "must present medical testimony." Zwiren v. Thompson, 276 Ga. 498, 503, 578 S.E.2d 862 (2003); McDowell, 392 F.3d at 1295; Beasley v. Northside Hosp., Inc., 289 Ga. App. 685, 688, 658 S.E.2d 233 (2008) ("In a medical malpractice case, the plaintiff must present expert medical testimony establishing that the defendant's negligence either proximately caused or contributed to his injuries.")  The burden is on Dishman to come forward with admissible evidence on the issue of medical causation in order to demonstrate that there is a material issue of fact that should preclude summary judgment.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  Discovery is closed, and Dishman has presented no medical evidence or testimony to support his claim other than the testimony of Dr. Clancy, which is inadequate.[6]  Without the medical testimony, proof of causation is lacking.  As Dishman is unable to establish a material element of his claim, Defendants are entitled to summary judgment.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Exclude Expert Causation Testimony of Tamara Clancy, M.D. (Doc. 46) and Defendants' Motion for Summary Judgment (Doc. 33) are both **GRANTED**.  In light of the Court's rulings, Defendants' Motion for Partial Summary Judgment (Doc. 22), Defendants' Motion for Oral Hearing on Defendants' Motion for Partial Summary Judgment (Doc. 32), and Defendants'

---

[6] While Dishman does have an expert witness who will testify about the standard of care, only Dr. Clancy has been offered as an expert on causation.

Motion for Oral Hearing on Defendants' Motion for Summary Judgment (Doc. 35) are **DENIED AS MOOT.**

      **SO ORDERED**, this the 7th day of July, 2009.

                        *s/   Hugh Lawson*
                        **HUGH LAWSON, SENIOR JUDGE**

mbh